## UNITED STATES DISTRICT COURT

## DISTRICT OF MINNESOTA

| | |
|---|---|
| LOWELL P. BURRIS and JOYCE P. BURRIS, | Civil No. 07-3938 (JRT/JJK) |
| Plaintiffs, | |
| v. | **MEMORANDUM OPINION AND ORDER ON MOTIONS FOR SUMMARY JUDGMENT** |
| VERSA PRODUCTS, INC. and G & L PRODUCTS, INC., | |
| Defendants, | |
| and | |
| GULF UNDERWRITERS INSURANCE COMPANY, | |
| Intervenor. | |

Thomas F. Handorff, **HANDORFF LAW OFFICES, PC**, 1660 South Highway 100, Suite 500, St. Louis Park, MN 55416, for plaintiffs.

Richard A. Lind and Matthew D. Sloneker, **LIND JENSEN SULLIVAN & PETERSON, PA**, 901 Marquette Avenue South, Suite 1300, Minneapolis, MN 55402, for defendants.

Thomas A. Gilligan, Jr. and Nicholas J. O'Connell, **MURNANE BRANDT, PA**, 30 East Seventh Street, Suite 3200, St. Paul, MN 55101, for intervenor.

Plaintiffs Lowell and Joyce Burris (collectively, "Burris") brought this action after Lowell Burris suffered serious injuries falling from a ladder in August 2001. Burris brought claims against the manufacturers, Versa Products, Inc. and G & L Products, Inc.,

(collectively "Versa"), and the seller of the ladder, Menard, Inc.[1]   The Court granted the motion of Versa's former insurance company, Gulf Underwriters Insurance Company ("Gulf"), to intervene in the action and to stay proceedings on liability issues pending resolution of coverage issues.  (Mem. Op. & Order, Sept. 4, 2012, Docket No. 112.)  Gulf and Burris have filed cross-motions for summary judgment on the issue of whether Gulf has a duty to defend and indemnify Versa in this action.   Because genuine issues of material fact remain as to (1) whether Versa received and recorded Burris' claim while the insurance policy was in effect, as is required by the insurance policy; and (2) whether Gulf suffered prejudice as a result of not receiving prompt notice of Burris' claim, the Court will deny both motions.

## BACKGROUND

### I.   PROCEDURAL HISTORY

Burris brought the present action against Versa and Menard in state court and Menard removed the action to this Court.  (Notice of Removal, Sept. 11, 2007, Docket No. 1.)  Gulf then brought a related action in this Court seeking a declaratory judgment that it did not owe coverage to Versa or Menard for Burris' claims.  (Civ. No. 08-1292, Compl., May 9, 2008, Docket No. 1.)   The Court granted Gulf's motion for summary judgment in the declaratory judgment action on different grounds than those raised in Gulf's current motion.  (Civ. No. 08-1292, Mem. Op. & Order, May 30, 2011, Docket

---

[1] In an earlier order, the Court granted Menard's motion for summary judgment.  (Mem. Op. & Order at 14, Sept. 29, 2009, Docket No. 93.)

No. 62.)  The Court then stayed the present action pending Burris' appeal of the coverage

decision.  (Order Staying Case, July 6, 2011, Docket No. 102.)  A panel of the Eighth

Circuit Court of Appeals reversed the Court's coverage decision in the declaratory

judgment action and remanded the action to this Court with directions for the Court to

dismiss the declaratory judgment action because it concluded that the "preferred

procedure" under Wisconsin law is for the interested insurance company to intervene in

the underlying action.  *See Gulf Underwriters Ins. Co. v. Burris*, 674 F.3d 999, 1006

(8th Cir. 2012).  Gulf then moved to intervene in the present action, bifurcate the

proceedings into coverage and liability phases, and stay the liability phase pending

resolution of the coverage dispute, which the Court granted.  (Mem. Op. & Order,

Sept. 4, 2012, Docket No. 112.)  Gulf and Burris have both filed motions for summary

judgment on the coverage issue.

## II.     FACTS RELEVANT TO THE COVERAGE DISPUTE

### A.     The Policy

Gulf issued a "claims made" policy to Versa on March 3, 2003.[2]  (Aff. of

Thomas F. Handorff, Ex. 2 ("the Policy") at 1, Jan 2, 2013, Docket No. 122.)  The Policy

was cancelled by Gulf on May 5, 2003 and was therefore in force for slightly over two

---

[2] "A claims made policy insures for negligent acts, including those occurring prior to the policy's effective date, as long as the claim is made during the policy period.  This differs from the more common occurrence policy, which provides insurance for acts occurring during the policy period, even though the claim may not be asserted until long after the policy had expired." *Md. Cas. Co. v. Ben-Hur*, 553 N.W.2d 535, 537 (Wis. Ct. App. 1996) (citation and internal quotation marks omitted).

months.  (*Id.* at 50.)  The Policy states that it applies to claims for bodily injury only if the claim is made during the policy period.  (Policy at 1 of 15.)  Under the Policy, a claim is deemed made when it is "received and recorded" by Gulf or its insured (here, Versa). (*Id.*)   The Policy also required Versa to "[n]otify [Gulf] as soon as practicable" when Versa received a claim.  (*Id.* at 9 of 15.)

## B.    The Demand Letter

Burris alleges that his former attorney, Dennis Letourneau, mailed a demand letter to Versa on March 14, 2003, notifying Versa of Burris' claims, providing documentation of Burris' damages from health care providers, and proposing a settlement.   (*See* Handorff Aff., Ex. 1 ("Demand Letter").)  Letourneau submitted an affidavit explaining that he prepared the Demand Letter and had his secretary, Gina Dorethy, type the letter in final form on letterhead.  (Aff. of Dennis R. Letourneau ¶¶ 3-4, Jan. 2, 2012, Docket No. 123.)  He claims that he signed the letter and "then my office placed the letter with all the attachments in a stamped envelope addressed to Versa Products at 16900 West Victor, New Berlin, WI 53151, and then mailed the sealed envelop[e]."  (*Id.* ¶ 4.) Dorethy filed an affidavit as well, stating that she "cannot specifically recall after ten years whether the demand letter [she] typed to send to [Versa] was mailed by me or signed and mailed by Mr. Letourneau."  (Aff. of Gina Dorethy ¶ 6, Apr. 11, 2013, Docket No. 146.)  Letourneau alleges that the version of the letter that has been provided to the Court is the version that was saved on his computer and that it was not office policy to make photocopies of the signed, final version of letters.  (Letourneau Aff. ¶¶ 6-7.)  The

Demand Letter was never returned to Letourneau, (*id.* ¶ 5), and Burris presents evidence that Versa's President, David Lambert, was receiving mail at the address to which the Demand Letter was allegedly mailed as late as April 2003.  (Handorff Aff., Ex. 13.)

Versa denies receiving the Demand Letter.  Lambert filed an affidavit claiming that he had not heard of Burris prior to being served with the complaint on August 14, 2007.  (Handorff Aff., Ex. 8 (Aff. of David Lambert) ¶¶ 3-4.)  He avers that he never saw the Demand Letter that was purportedly mailed to Versa and that Versa has no record of the letter.  (*Id.* ¶¶ 6-7.)  Lambert states that "[g]iven the nature of [the Demand Letter], and the apparent volume of materials which were shown as being attached to the letter, I am very confident that I would have responded to the letter by immediately sending it on to my insurance company for their attention and action."  (*Id.* ¶ 11.)

Gulf also denies receiving the Demand Letter or any notice of the Burris claim while the Policy was in effect.  (Civ. No. 08-1292, Aff. of David Halpin ¶ 5, Apr. 30, 2010, Docket No. 37.)  Gulf alleges that it first received notice of the Burris claim when counsel for former-defendant-Menard contacted Travelers Insurance Company ("Travelers"), Gulf's parent company, regarding the claim on December 21, 2007.  (*See* Handorff Aff., Ex. 6.)[3]  Menard's letter to Travelers referred to the Demand Letter and argued that the Demand Letter triggered a duty for Gulf to defend and indemnify the defendants because it was dated March 14, 2003, which fell within the policy period.

---

[3] Menard sent a substantially similar letter to another Travelers' employee giving the same notice slightly earlier, on November 9, 2007.  (Handorff Aff., Ex. 5.)

(*Id.*)  Carole Elwell, a senior technical specialist at Travelers, responded on behalf of Gulf in May 2008, stating that Gulf would defend the action under a reservation of rights, but that Gulf believed there was no coverage because neither Gulf nor Versa had received notice of the claim during the policy period.  (Handorff Aff., Ex. 7.)

### C.    Versa and Risk Retention Services

Although Versa and Gulf deny having received the Demand Letter while the Policy was in effect, Burris believes that Versa's explanation is unworthy of credence for the reasons below.  Shortly after Burris filed the complaint in 2007, counsel for Burris received a letter from an attorney who formerly represented Versa, stating that Versa "was formally dissolved on December, 29, 2005" and had no "assets of any sort" at the time of its dissolution.  (Handorff Aff., Ex. 3.)  Discovery revealed that prior to Versa's dissolution, Versa had a relationship with a company called Risk Retention Services ("RRS") that "provide[s] risk analysis, insurance consultation, and even prosecute[s] first party claims on behalf of [its] clients," many of which are ladder manufacturers. (Handorff Aff., Ex. 12 at 1.)  During this relationship, it appears that Versa's process when it received a claim was to send the materials to Paul Junius at RRS.  (Handorff Aff., Ex. 13 at 000175 (filed under seal).)

There are no sworn statements from Junius in the record.  The facts that the Court gleans regarding Versa and RRS's relationship come primarily from notes that were apparently taken by Elwell during her investigation of Burris' claim.  It is not clear from the record exactly when, but at some point Versa's relationship with RRS deteriorated,

and RRS stopped providing services to Versa.  Elwell's notes indicate that Junius told her RRS had stopped taking new claims from Versa before the Gulf policy was in effect and has "nothing in his data base" about the Burris claim.  (*Id.* at 000174-75 (filed under seal).)[4]  However, as late as March 2006, approximately three years after the Demand Letter was allegedly sent, RRS was still in possession of a substantial amount of materials relating to claims against Versa and was in contact with Versa disputing outstanding fees that Versa allegedly owed RRS.  (Third Aff. of Thomas F. Handorff, Ex. 2 at 000323, Apr. 11, 2013, Docket No. 145 (filed under seal).)  On March 31, 2006, Junius had thirty-three boxes of materials relating to Versa delivered to Versa's former attorney.  (*Id.* at 324-25 (filed under seal).)  The attorney then wrote a letter to Lambert offering to send the boxes to Lambert, store the boxes at Lambert's expense, or destroy them.  (*Id.* at 324 (filed under seal).)  Because those boxes have not been disclosed during discovery despite Burris' extensive requests for documents relating to Versa, Burris suspects that the materials were destroyed and that they likely contained information on his claim, including the Demand Letter.

---

[4] Burris' former attorney, Letourneau, avers that Elwell called him in early 2008 and informed him that Junius had been retained by Versa and had investigated the Burris claim. (Letourneau Aff. ¶ 8.)  This appears to be inconsistent with the Elwell's notes and presents a factual dispute.

## ANALYSIS

## I.     STANDARD OF REVIEW

### A.     Summary Judgment

Summary judgment is appropriate where there are no genuine issues of material fact and the moving party can demonstrate that it is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  A fact is material if it might affect the outcome of the suit, and a dispute is genuine if the evidence is such that it could lead a reasonable jury to return a verdict for either party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A court considering a motion for summary judgment must view the facts in the light most favorable to the non-moving party and give that party the benefit of all reasonable inferences that can be drawn from those facts.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

### B.     Interpretation of Insurance Policies

This coverage dispute is governed by Wisconsin law.  *See Gulf*, 674 F.3d at 1001. Under Wisconsin law, insurance policies are construed according to the same rules that apply to the interpretation of any other contract.  *See Kremers-Urban Co. v. Am. Emp'rs Ins. Co.*, 351 N.W.2d 156, 163 (Wis. 1984).  "The primary objective in interpreting and construing a contract is to ascertain and carry out the true intent of the parties."  *Frost ex rel. Anderson v. Whitbeck*, 654 N.W.2d 225, 229 (Wis. 2002).  If the language of the policy is "susceptible to more than one reasonable construction," it must be construed in favor of the insured.  *Id.* at 230.  However, if the language is unambiguous, the Court

must "interpret the policy according to its plain and ordinary meaning to avoid imposing contract obligations that the parties did not undertake." *Id.* Although the present motion pits Burris against Gulf, the parties to the Policy at issue are Versa and Gulf.

## II.    MOTIONS FOR SUMMARY JUDGMENT

Gulf advances two primary arguments in favor of its motion for summary judgment: (1) there is no evidence that either Gulf or Versa "received and recorded" Burris' claim while the Policy was in effect; and (2) even if Versa did receive and record the claim, it failed to provide Gulf with prompt notice of the claim's existence.   The Court will address these arguments in turn and find that genuine issues of material fact remain as to both of Gulf's contentions, rendering summary judgment inappropriate.

### A.    Received and Recorded

As explained above, Gulf and Versa both deny receiving and recording Burris' claim.  Gulf's claims handler that was assigned to Burris' claim reviewed Gulf's records and found no record of the claim during the time period while the Policy was in effect. Versa's president, Lambert, avers that he did not receive the Demand Letter prior to 2008 and he discovered no records of Burris' claim.   And it appears, although there are no sworn statements to this effect, that Junius believes that Versa did not send the Demand Letter to RRS because RRS had stopped accepting new claims from Versa at that time.

To overcome this evidence, Burris presents affidavits from his former attorney and the attorney's former secretary swearing that the Demand Letter was mailed to Versa on March 14, 2003, as well as evidence that Versa was receiving mail at the address to

which the Demand Letter was allegedly sent.[5]   Under Wisconsin law, "[i]t is well established that the mailing of a letter creates a presumption that the letter was delivered and received."  *State ex rel. Flores v. State*, 516 N.W.2d 362, 370 (Wis. 1994).   The presumption is rebuttable, however.  If the would-be recipient of the letter denies receipt, "the presumption is spent and a question of fact is raised" as to whether the letter was received.  *Id.*  Here, the Court concludes that Versa has presented sufficient evidence that the Demand Letter was mailed to trigger the rebuttable presumption, despite the lack of absolute certainty in the affidavits regarding the details of how this particular letter was allegedly mailed ten years ago.  *See id.* ("Evidence that a given letter was mailed does not necessarily require specific recollection by the sender as to that particular letter.   An office . . . may show that it is the ordinary course of business or office practice to mail the item in question.").

Gulf argues that this rebuttable presumption, which Gulf refers to as the "mailbox rule," is inapplicable in the context of a claims made insurance policy.  Gulf focuses on a case in which the Wisconsin Court of Appeals concluded there was no coverage under a claims made policy where the insured mailed the letter prior to the end of the policy period, but the letter was not received until after the policy period expired.  *See Md. Cas.*

---

[5] Gulf contends that the version of the Demand Letter attached to the Letourneau affidavit is inadmissible because it is not the original writing and it does not qualify as an admissible "duplicate" under the Federal Rules of Evidence.  *See* Fed. R. Evid. 1001(e) (defining "duplicate"); Fed. R. Evid. 1002-3 (requiring either an original or a duplicate of a writing to prove its contents).  However, Gulf does not address Federal Rule of Evidence 1004(a), which relaxes the requirement of an original or duplicate when "all the originals are lost or destroyed, and not by the proponent acting in bad faith."

*Co. v. Ben-Hur*, 553 N.W.2d 535, 537-38 (Wis. Ct. App. 1996).  In *Ben-Hur*, the court

rejected the insured's invitation to apply a common law rule, which the court referred to

as the "mail-box rule," that would have deemed the letter received on the same day it was

sent.  *See id.* at 538.  However, Burris does not contend that the Demand Letter should be

deemed received **on the day it was sent**.  Rather, he seeks to invoke a different rule,

where his evidence of the letter being sent creates a rebuttable presumption that it was

**subsequently** received, before the Policy expired on May 5.  The potential for confusion

arises because the two somewhat similar rules are both sometimes referred to as the

"mailbox rule."  *Compare Domanik Sales Co., Inc. v. Paulaner-N. Am. Corp.*, 622

N.W.2d 769, at *2 (Wis. Ct. App. 2001) (per curiam) (declining to invoke the "mailbox

rule" and deem a payment made on the day that it was mailed, where payment was

received one day after a deadline); *with* Am. Jur. 2d Evidence § 273 ("Under the common

law 'mailbox rule,' if a letter properly directed is proved to have been either put into the

post office or delivered to the mail carrier, and not returned to the sender, it is presumed

. . . that it reached its destination at the regular time, and was received by the person to

whom it was addressed.").

The Court has located no authority indicating that the common law rebuttable

presumption that Burris seeks to invoke is inapplicable in the context of a claims made

insurance policy.  Because the Court finds that the rebuttable presumption is triggered

and Lambert denies receiving the letter, "[t]he issue is . . . one of credibility for the

factfinder."[6] *Flores*, 516 N.W.2d at 370. The Court further determines that a reasonable factfinder could find Lambert's denial of receipt to lack credibility, not only because of the sworn statements that the Demand Letter was mailed, but also because of other evidence suggesting that Lambert may still have been receiving mail at the address to which the Demand Letter was sent. Thus, genuine issues of material fact remain as to whether Versa received Burris' claim.

The Court must next determine whether genuine issues of material fact remain as to whether Versa or Gulf recorded Burris' claim, because the Policy requires that a claim be "received **and recorded**" while the Policy is in effect. (Policy at 1 of 15.) The parties devoted little attention to the "recorded" requirement and the Court has located almost no authority examining what act might satisfy such a requirement in a claims made policy. The Court interprets the meaning of language in an insurance policy as a matter of law and construes terms as they would be construed by a reasonable insured. *See Frost*, 654 N.W.2d at 227-28.

Burris contends that if Versa in fact received the Demand Letter and forwarded the materials to RRS, the recording requirement would be satisfied, regardless of whether Versa maintained its own written record of the claim. While the facts surrounding Versa's relationship with RRS are not thoroughly developed, the Court finds that Burris

---

[6] On the issue of Lambert's credibility, Burris draws heavily on two depositions of Lambert in prior actions not involving Gulf. The Court will not address the substance of these depositions because the Court finds that they are inadmissible against Gulf in the present action. Gulf was not present or represented when they were taken; Gulf did not have reasonable notice of their occurrence; Burris has not established that Lambert is unavailable; and Gulf was not a party to the earlier action. *See* Fed. R. Civ. P. 32(a)(1), (a)(4), (a)(8).

could potentially prove a set of facts at trial that would allow the Court to conclude that the recording requirement was satisfied. If an insured has a practice of sending claims against it to a third-party and allowing that third-party to address the claims and interact with the insurer, it might be reasonable for the insured to believe that forwarding a received claim to the third-party for handling and administration of the claim satisfies the requirement that the claim be "recorded." Although Lambert claims to have no record of the Demand Letter, Burris has presented evidence that thirty-three boxes potentially containing records of claims against Versa were destroyed. If a jury determines that Versa did receive the Demand Letter and send it to RRS, and that any material relating to, or any recording of, the Burris claim was among materials that were destroyed, those facts could support the conclusion that Versa not only received the claim, but also recorded it. Therefore, genuine issues of material fact remain as to whether Versa "recorded" the Burris claim within the meaning of the Policy and the Court cannot grant summary judgment on that basis.

### B.    Notice and Prejudice

Gulf argues in the alternative that even if Versa received and recorded the Burris claim while the Policy was in effect, Versa failed to give timely notice of the claim to Gulf. As noted above, the Policy required Versa to notify Gulf "as soon as practicable" when Versa received a claim. Burris allegedly made his claim in March 2003. Gulf contends that it did not receive notice of the claim until December 2007, and that the notice did not come from Versa, but instead from counsel for former-defendant Menard.

Burris does not appear to challenge Gulf's contentions. Therefore, if Burris did in fact send his claim to Versa in March 2003, the Court will find as a matter of law that Versa did not notify Gulf of the claim as soon as practicable.

Determining that Versa failed to give notice as required by the Policy does not end the inquiry, however. A Wisconsin statute provides that "[f]ailure to give notice as required by the policy . . . does not bar liability under the policy if the insurer was not prejudiced by the failure, but the risk of nonpersuasion is upon the person claiming there was no prejudice." Wis. Stat. § 632.26. Under this provision, and under caselaw that predated the provision and appears consistent with the provision, "where notice is given more than one year after the time required by the policy, there is a rebuttable presumption of prejudice." *Gerrard Realty Corp. v. Am. States Ins. Co.*, 277 N.W.2d 863, 872 (Wis. 1979); *see also Neff v. Pierzina*, 629 N.W.2d 177, 185 (Wis. 2001). Thus, the Court must determine whether Burris has rebutted the presumption of prejudice and created a genuine issue of fact for trial.

"Generally, whether a liability insurer has been prejudiced by late notice is considered a question of fact . . . ." *Id.* at 186 (internal quotation marks omitted); *see also Fireman's Fund Ins. Co. of Wis. v. Bradley Corp.*, 660 N.W.2d 666, 683 (Wis. 2003). "Prejudice to the insurer in this context is a serious impairment of the insurer's ability to investigate, evaluate, or settle a claim, determine coverage, or present an effective defense, resulting from the unexcused failure of the insured to provide timely notice." *Neff*, 629 N.W.2d at 185. "Whether an insurer has been prejudiced is governed by the facts and circumstances in each case." *Id.*

Wisconsin courts have explained that an insurer may suffer prejudice in a number of ways, including if (1) it cannot investigate the circumstances of an accident, (2) witnesses' memories fade or their positions become incorrectly entrenched, (3) evidence is lost, (4) the insurer cannot attempt to negotiate a settlement prior to litigation, or (5) the insurer cannot take part in discovery. *See, e.g.*, *id.* at 187-88.[7] Conversely, where notice was received early enough in the process that the insurer had a full opportunity to review the claim prior to discovery and potentially shape and control the action, courts often find no prejudice. *See, e.g.*, *Int'l Flavors & Fragrances, Inc. v. Valley Forge Ins. Co.*, 738 N.W.2d 159, 163-65 (Wis. Ct. App. 2007); *Bradley Corp. v. Zurich Ins. Co.*, 984 F. Supp. 1193, 1203 (E.D. Wis. 1997).

The Court finds that Burris has rebutted the presumption of prejudice by demonstrating that Gulf may have had, and may still have, a full opportunity to participate in discovery and settlement negotiations.  Burris' argument that no crucial evidence has been destroyed and that no central witnesses are unavailable contributes to his rebuttal of the presumption of prejudice.  While the twelve years that have passed since the accident could possibly support a finding of prejudice, a reasonable factfinder could also determine that Gulf has not suffered a "serious impairment" in its ability to participate in and defend the action. *Neff*, 629 N.W.2d at 185.

---

[7] *See also Ansul, Inc. v. Emp'rs Ins. Co. of Wausau*, 826 N.W.2d 110, 119 (Wis. Ct. App. 2012); *Phoenix Contractors, Inc. v. Affiliated Capital Corp.*, 681 N.W.2d 310, 314 (Wis. Ct. App. 2004); *O'Connor v. Cindy Gerke & Assocs., Inc., Realtors*, No. 01-C-0604-C, 2002 WL 32344435, at *5 (W.D. Wis. July 16, 2002).

For the reasons above, the Court will deny Gulf's motion for summary judgment. Because the issue of coverage depends on the resolution of the various factual disputes outlined in this opinion, the Court will also deny Burris' motion for summary judgment.[8]

## III.   ALLEGATIONS OF ETHICAL AND PROCEDURAL VIOLATIONS

The Court will briefly address several peripheral matters, many of which arose in a supplemental memorandum submitted by Burris (Pls.' Supplemental Mem. in Supp., Apr. 11, 2013, Docket No. 144) and Gulf's response (Response, Apr. 17, 2013, Docket No. 147).  First, a portion of Burris' supplemental memorandum is devoted to describing the purportedly unethical conduct of one of Gulf's attorneys in contacting Dorethy via Facebook to ask questions about Letourneau's office practices at the time the Demand

---

[8] In addition to its substantive arguments regarding coverage, Gulf contends it is entitled to summary judgment because it served various requests for admissions on Burris in the related declaratory judgment action and Burris' responses were untimely.  (*See* Civ. No. 08-1292, Aff. of Nicholas J. O'Connell, Exs. F & G, Apr. 30, 2010, Docket No. 36.)  Under the Federal Rules, an untimely response to a request for an admission amounts to an admission, *see* Fed. R. Civ. P. 36(a)(3), and such admissions would be dispositive of the coverage issues in the present case. However, under Rule 36(b), the Court may, on motion, allow a party to withdraw an admission "if it would promote the presentation of the merits of the action and if the court is not persuaded that it would prejudice the requesting party in maintaining or defending the action on the merits." Burris requested that the Court allow him to withdraw the admissions in the declaratory judgment action, (Civ. No. 08-1292, Mem. in Opp. at 18-20, June 30, 2010, Docket No. 48), and the Court construed Burris' request as a motion and denied it as moot when it granted Gulf's motion for summary judgment in that action, (Civ. No. 08-1292, Mem. Op. & Order at 12, Mar. 30, 2011, Docket No. 62).  The matter is clearly no longer moot in light of the Eighth Circuit's opinion reversing the grant of summary judgment.  In his filings in the present case, Burris continues to deny the matters that were previously "admitted," and the Court construes Burris' filings as a renewed motion to withdraw those admissions. *See Quasius v. Schwan Food Co.*, 596 F.3d 947, 951 (8th Cir. 2010) (endorsing a "generous" interpretation of the phrase "on motion" in Rule 36(b)).  The Court will grant the request because there is no evidence that Gulf has been prejudiced in its ability to defend the merits of the coverage dispute and withdrawing the admissions will allow the parties to present the merits of the coverage dispute.

Letter was allegedly mailed.  Without definitively commenting on the merits of the ethical allegations, the Court notes that (1) the only authority Burris provides for his ethical allegations is a string cite to several of the Minnesota Rules of Professional Conduct; and (2) Gulf's response makes clear that Burris' allegations are based solely on the third message from a series of three message, and considering the conversation as a whole appears to wash away many, if not all, of Burris' ethical concerns.

Second, because of the alleged unethical conduct, Burris purports to make a "formal request" for attorney fees in his supplemental memorandum.  (Pls.' Supplemental Mem. in Supp. at 11.)  Regardless of whether Burris' request amounts to a formal motion for attorney fees, the Court finds that the conduct Burris has identified does not justify the Court awarding fees.  Therefore, Burris' request is denied.

Third, Gulf requests that the Court strike the allegations of unethical conduct from the record, which the Court will deny.  The Court has discretion to strike material that is "redundant, immaterial, impertinent, or scandalous."  *See* Fed. R. Civ. P. 12(f).  Motions to strike "are viewed with disfavor and are infrequently granted."  *Stanbury Law Firm v. I.R.S.*, 221 F.3d 1059, 1063 (8th Cir. 2000) (addressing a district court's decision to strike a party's pleading and memorandum).  The Court does not find that Burris' allegations are so scandalous or impertinent as to necessitate such an "extreme measure."  *Id.*

Finally, Gulf urges the Court to disregard the supplemental memorandum because Burris did not request permission to file it.  *See* D. Minn. LR 7.1(i).  The Court cautions counsel to abide by the Local Rules in the future, but finds that the drastic sanction of disregarding the memorandum and supporting materials is not warranted.

This case will be placed on the Court's next available trial calendar, and the parties should expect a trial calendar beginning on November 18, 2013.

## ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Intervenor's Motion for Summary Judgment [Docket No. 118] is **DENIED** and Plaintiffs' Motion for Summary Judgment [Docket No. 120] is **DENIED**.

DATED:  August 26, 2013
at Minneapolis, Minnesota.

                             s/ John R. Tunheim
                                  JOHN R. TUNHEIM
                              United States District Judge