# UNITED STATES DISTRICT COURT

## DISTRICT OF MNNESOTA

| | |
|---|---|
| LOWELL P. BURRIS and<br>JOYCE P. BURRIS, | Civil No. 07-3938 (JRT/JJK) |
| Plaintiffs, | |
| v. | **MEMORANDUM OPINION AND<br>ORDER DENYING MOTION FOR<br>NEW TRIAL** |
| GULF UNDERWRITERS INSURANCE<br>COMPANY, | |
| Defendant. | |

Thomas F. Handorff, **HANDORFF LAW OFFICERS, P.C.**, 1660 South Highway 100, Suite 500, St. Louis Park, MN  55416, for plaintiffs.

Thomas A. Gilligan, Jr. and Nicholas J. O'Connell, **MURNANE BRANDT, PA**, 30 East Seventh Street, Suite 3200, St. Paul, MN  55101, for defendant.

Plaintiffs Lowell and Joyce Burris bring this motion for a new trial, or, in the alternative, summary judgment, after a jury returned a verdict in favor of Defendant Gulf Underwriters Insurance Company ("Gulf").  Because the Court concludes that the lack of a spoliation instruction and admission of Plaintiffs' former counsel's disciplinary record were not in error, the Court will deny the motion.

# BACKGROUND[1]

Plaintiff Lowell Burris was injured while using a ladder manufactured by Versa Products, Inc. ("Versa").  Plaintiffs and Versa entered into an agreement under *Miller v. Shugart*, 316 N.W.2d 729 (Minn. 1982), pursuant to which Versa admitted liability and permitted Plaintiffs to seek recovery from Versa's insurance company, Gulf. (Stipulation, Sept. 27, 2013, Docket No. 153.)  Versa held a "claims-made" insurance policy issued by Gulf from March through May 2003, meaning that the policy covers any claim that was made during that time, regardless of when the underlying injury occurred. (First Aff. of Thomas F. Handorff, Ex. 2 ("Policy"), Jan. 2, 2013, Docket No. 122.)  The policy defines a claim as being "made" when "notice of such claim is received and recorded by any insured or by us, whichever comes first."  (Policy at 7.)[2]

Plaintiffs claim that the policy covers Lowell Burris' claim because his former counsel, Dennis Letourneau, mailed a letter to Versa detailing the claim on March 14, 2003.  Gulf disputes that Versa received or recorded the letter.  In an order dated August 26, 2013, the Court denied motions for summary judgment by both parties. *Burris v. Versa Prods., Inc.*, Civ. No. 07-3938, 2013 WL 4519338, at *7 (D. Minn. Aug. 26, 2013).  The Court concluded that affidavits by Letourneau and his secretary,

---

[1] The Court recites the background facts only to the extent necessary to rule on the instant motion.  A more complete recitation of the facts appear in the Court's previous orders in this case. *See, e.g.*, *Burris v. Versa Prods., Inc.*, Civ. No. 07-3938, 2013 WL 4519338 (D. Minn. Aug. 26, 2013); *Burris v. Versa Prods., Inc.*, Civ. No. 07-3938, 2009 WL 3164783 (D. Minn. Sept. 29, 2009); *see also Gulf Underwriters Ins. Co. v. Burris*, 674 F.3d 999 (8th Cir.), *reh'g denied* (May 3, 2012).

[2] All page numbers refer to the CMECF pagination unless otherwise noted.

Gina Dorethy, stating that the letter was mailed sufficed to defeat Gulf's motion for summary judgment, even though there is no physical evidence of it having been mailed (e.g. a photocopy or certification) because the affidavits were enough to trigger a rebuttable presumption under Wisconsin law that a mailed letter was received. *Id.* at *4.[3] The Court declined, however, to grant Plaintiffs' motion for summary judgment on the issue of receipt because it concluded that testimony by Versa's former CEO, David Lambert, that Versa did not receive the letter, rebutted the presumption and made the issue one for the jury. *Id.* at *5 (citing *State ex rel. Flores v. State*, 516 N.W.2d 362, 370 (Wis. 1994) ("If the defendant denies receipt of the mailing, the presumption is spent and a question of fact is raised.")).  The Court further concluded that a fact issue remained as to whether the claim letter was "recorded" while the policy was in effect. *Id.* at *5-6.

The parties proceeded to trial, where they agreed that the two issues for the jury were whether the supposed March 14, 2003 claim letter from Letourneau was received and recorded by Versa during the effective period of the policy.  (*See* Proposed Jury Instructions and Verdict Form, Ex. 1, Dec. 4, 2013, Docket No. 188.)  Both parties submitted motions in limine.  Plaintiffs requested, among other things, that the Court include an adverse inference instruction on account of spoliation, pointing to the fact that a third-party claims handler for Versa had sent thirty-three boxes of records back to Versa, which Versa subsequently destroyed.  (Pls.' Mot. in Limine at 7-8, Nov. 17, 2013, Docket No. 166.)  Plaintiffs also requested that the Court exclude any evidence of the

---

[3] Wisconsin law governs this dispute.  *See Gulf Underwriters Ins. Co. v. Burris*, 674 F.3d 999, 1001 (8th Cir.), *reh'g denied* (May 3, 2012).

attorney disciplinary history of Dennis Letourneau, Plaintiffs' former counsel, as irrelevant and prejudicial.  (*Id.* at 4-6.)  The Court preliminarily denied the spoliation instruction request, inviting Plaintiffs to again seek the instruction after having produced evidence at trial that would warrant the instruction.  (Minute Entry, Dec. 2, 2013, Docket No. 186.)  The Court granted in part and denied in part Plaintiffs' request regarding Letourneau's disciplinary history, concluding that evidence of his disciplinary proceedings relating to his office mailing practices would be admissible but the actual consequences he faced as a result of those proceedings (including his suspension), would not be.  (*Id.*)  After three days of trial, the jury returned a verdict for Gulf, concluding that Versa did not receive a claim letter regarding Burris' injuries during the relevant period of the policy.  (J., Dec. 9, 2013, Docket No. 196.)

Plaintiffs now move for a new trial, or, in the alternative, reconsideration of their motion for summary judgment.  (*See* Mem. in Supp. of Mot. for New Trial at 1, Jan. 6, 2014, Docket No. 201.)  Plaintiffs make two arguments in support of their motion for a new trial: first, that the Court erred in declining to issue a spoliation instruction to the jury on account of the thirty-three boxes of records Versa destroyed, and second that the Court erred in admitting evidence of Dennis Letourneau's disciplinary history.

## ANALYSIS

## I.     MOTION FOR NEW TRIAL

### A.     Standard of Review

Under Rule 59(a) of the Federal Rules of Civil Procedure, the Court may grant a motion for a new trial "on all or some of the issues."  Fed. R. Civ. P. 59(a)(1).  "A new

trial is appropriate when the first trial, through a verdict against the weight of the evidence . . . or legal errors at trial, resulted in a miscarriage of justice." *Gray v. Bicknell*, 86 F.3d 1472, 1480 (8th Cir. 1996). "District courts enjoy broad discretion in choosing whether to grant a new trial . . . ." *Douglas Cnty. Bank & Trust Co. v. United Fin. Inc.*, 207 F.3d 473, 478 (8th Cir. 2000) (alteration and internal quotations omitted). A motion for a new trial should be granted only if the jury's verdict is so against the great weight of the evidence that it constitutes a miscarriage of justice. *Ogden v. Wax Works, Inc.*, 214 F.3d 999, 1010 (8th Cir. 2000).

## B.    Spoliation Instruction

Plaintiffs first argue that a new trial is warranted because the Court erred in declining to give an adverse inference instruction to the jury on the basis of the thirty-three boxes of files returned to Versa by its third-party handler that were destroyed. Plaintiffs sought to instruct the jury that:

> If evidence is destroyed that could reasonably be expected to have been produced, and the party who destroyed the evidence fails to give a reasonable explanation, you may decide that the evidence would have been unfavorable to that party.

(Pls.' Proposed Jury Instructions at 26, Nov. 18, 2013, Docket No. 175.)

Under federal law, in order for an adverse inference instruction based on spoliation to be appropriate, "there must be a finding of **intentional destruction** indicating a desire to suppress the truth." *Sherman v. Rinchem Co., Inc.*, 687 F.3d 996, 1006 (8th Cir. 2012) (internal quotation marks omitted) (emphasis added); *see also*

*Stevenson v. Union Pac. R. Co.*, 354 F.3d 739, 746 (8th Cir. 2004)).[4]  Thus, the Court must determine whether it appropriately exercised its discretion in declining to issue a spoliation instruction on the basis that Plaintiffs failed to present sufficient evidence that Versa intentionally destroyed the boxes of records in an attempt to keep their contents from being revealed in this litigation.

The Court denied Plaintiffs' pre-trial request for the instruction, concluding that Plaintiffs had not yet presented sufficient evidence to warrant such an instruction.  Later during the charging conference, the Court again declined to include a spoliation instruction on the basis of destruction of the boxes because it concluded that there was insufficient evidence at trial that the boxes had been intentionally destroyed in anticipation of this litigation.  In their motion for new trial, Plaintiffs again point to the deposition testimony of David Lambert as the sole evidence that he "made a knowing, intentional and deliberate decision to destroy all 33 boxes of the claim files and records his attorney received from Mr. Junius."  (Mem. in Supp. of Mot. for New Trial at 4-5.)  As support for this claim, Plaintiffs point to the following portions of the Lambert deposition:

> Q:   This is a letter – On that same day that your lawyer received the 33 boxes of claim files in his office, this is a letter that your lawyer sent to you regarding those files.
>
> Do you remember what happened to those files, by the way?

---

[4] Plaintiffs argue that Wisconsin law governs whether a spoliation instruction should be issued, but the Eighth Circuit has held otherwise.  *See Sherman*, 687 F.3d at 1006 ("We now hold, in accordance with our sister circuits, that federal law applies to the imposition of sanctions for the spoliation of evidence.").

A:      They were destroyed.

Q:      And you gave him the authority to destroy those files?

A:      I discussed it with him and we both agreed they should be destroyed. They are not our records.

. . .

Q:      And so, in response to this letter, are you saying that you and your lawyer talked about it and you destroyed those claim files?

A:      Yes.

. . .

Q:      And what was all your reasons for why those boxes should be destroyed?

A:      They weren't my records, and I have no responsibility for them. They were insurance company records.

. . .

Q:      Did you or your lawyer contact the insurance company before destroying those records?

. . .

A:      Well, Paul Junius was the representative of the insurance company, and he's the one that forwarded them to us.

. . .

Q:      Did you call Paul Junius and ask him if he could – if you could destroy those 33 boxes of claim files and other materials?

A:      He didn't want them.  He sent them to us.  So that he didn't care what we did with them.  He didn't want them.

(Fifth Aff. of Thomas F. Handorff, Ex. 1 (Dep. of David Lambert ("Lambert Dep.") 70:11-73:9), Jan. 6, 2014, Docket No. 202.)  Nothing in this testimony establishes that the boxes were intentionally destroyed and Plaintiffs adduced no further evidence of intent to destroy or suppress the truth at trial.  Plaintiffs argue that Lambert was made aware of this litigation in 2007, but present no evidence that the thirty-three boxes of files from

Versa's third-party handler were destroyed after this litigation commenced. (Reply Mem. in Supp. of Mot. for New Trial at 3-4, Jan. 31, 2014, Docket No. 208.)[5]

Furthermore, Lambert's testimony indicates that, even though he may not have had specific knowledge of the contents of the boxes, he knew that any letters related to Burris' claim would not have been in the boxes because at the time Burris' letter was allegedly sent, Versa was not using that third-party handler. (Lambert Dep. 74:5-17.) Thus, this testimony does not suggest that Versa destroyed the boxes in bad faith, or even that they knew or should have known that the boxes contained evidence that would be essential to this litigation. The Court therefore again concludes that there was not sufficient evidence to warrant an adverse spoliation instruction. *Cf. Millenkamp v. Davisco Foods Int'l, Inc.*, 562 F.3d 971, 981 (9th Cir. 2009) (concluding district court did not abuse its discretion in rejecting proposed adverse inference instruction where "there [wa]s no evidence in the record to indicate that the Millenkamps knew that litigation would be forthcoming when they allowed the evidence to spoil"); *Insignia Sys., Inc. v. News Am. Mktg. In-Store, Inc.*, Civ. No. 04-4213, 2009 WL 483850, at *4-5 (D. Minn. Feb. 25, 2009) (finding that meeting minutes from which no reasonable inference could be drawn suggesting that "the report was prepared and thereafter ordered to be destroyed due to the pending litigation" and deposition testimony that plaintiff was "concerned

---

[5] In their Reply, Plaintiffs appear to shift their focus from the thirty-three boxes to other claim files that they argue Lambert destroyed after 2010. (*See* Reply Mem. in Supp. of Mot. for New Trial at 4.) But the focus of Plaintiffs' spoliation request before and during trial was the thirty-three boxes, and the Court will not order a new trial for any failure to issue a spoliation instruction on a basis not requested during trial.

about the appropriateness of [the report] because of . . . their litigation, and [he thought] for that reason Jim Diracles wrote him and said look, destroy everything" were insufficient to show that "the pending litigation with NAM was Diracles' reason for having the files returned and destroyed"). The Court concludes that it was proper to conclude at the time of trial that there was an insufficient showing of bad faith or intentional destruction in anticipation of this litigation to warrant a spoliation instruction and declines to grant a new trial on that basis.

### C.   Dennis Letourneau's Disciplinary History

Plaintiffs also argue that a new trial is warranted because the Court erred in admitting evidence of Dennis Letourneau's attorney discipline history, arguing that such evidence should have been excluded under Federal Rules of Evidence 401, 402, and 403 as irrelevant and prejudicial.

#### 1.   Disciplinary History

The Minnesota Supreme Court has twice reviewed disciplinary proceedings against Letourneau. First, in 2006, he was disciplined for failing to serve a client's complaint within the relevant statute of limitations. *In re Letourneau*, 712 N.W.2d 183, 188 (Minn. 2006) (per curiam). The Minnesota Supreme Court reviewed a referee's determination that evidence showed that Letourneau violated rules regarding diligence, communication, and honesty. Most relevant to this trial, the violation of the rule regarding diligence was not in dispute, rather only the appropriate disciplinary action on account of the violation. In determining the appropriate punishment, the court noted that

"Letourneau's failure to commence an action for Sutherland prior to the expiration of the statute of limitations is a serious lapse of diligence." *Id.* at 189.  In addition to one year of supervised probation, public reprimand, and several other conditions, the court imposed the condition that Letourneau

> shall initiate and maintain **office procedures** which ensure that there are **prompt responses to correspondence**, telephone calls, and other important communications from clients, courts, and other persons interested in matters which respondent is handling, and which will ensure that respondent regularly reviews each and every file and completes legal matters on a timely basis.

*Id.* at 190 (emphasis added).

In 2011, Letourneau was again before the Minnesota Supreme Court for a disciplinary matter for failing to timely serve a potential defendant until after the statute of limitations expired, failing to make filings necessary to preserve his clients' claim, and not cooperating in a timely manner with the disciplinary investigation. *In re Letourneau*, 792 N.W.2d 444 (Minn. 2011) (per curiam).  The court found that "Letourneau demonstrated incompetent representation of a client under Minn. R. Prof. Conduct 1.1 by not communicating with his clients, consistently missing deadlines, failing to make filings needed to preserve his clients' claim, and failing to serve a potential defendant before the statute of limitations had run." *Id.* at 451.  Letourneau disputed the allegation that he did not inform his clients of the significant events in their litigation and offered conflicting testimony from that of his clients as to the frequency and extent of communications with them. *Id.*  The court found that "[t]he findings that Letourneau did not inform his clients of the significant events in their litigation are supported by the record." *Id.*

As a consequence for this "incompetent legal representation, neglect of a client matter, failure to communicate with clients, failure to obtain client approval before agreeing to forego claims, and [failure to fully cooperate] with an investigation," the court suspended Letourneau from the practice of law indefinitely, with no right to petition for reinstatement for a minimum of one year. *Id.* at 452. Although the referee recommended that Letourneau "be permitted to reapply only if he had sought professional help to address his chronic inability to perform his duties in a timely manner," the court declined to formally adopt that recommendation. *Id.* at 453.

### 2.    Admission at Trial

Plaintiffs moved in limine to preclude any discussion or questioning regarding Letourneau's disciplinary history. (Pls.' Mot. in Limine at 4-6.) The Court ruled that evidence of the results of any disciplinary proceedings must be excluded but the proceedings themselves, particularly to the extent that the Minnesota Supreme Court commented on Letourneau's office mailing practices, were admissible. (*See* Minute Entry, Dec. 2. 2013, Docket No. 187.)

Plaintiffs now argue that "[t]his issue brought on the eve of trial allowed Gulf to ignore the destruction of important evidence and subvert the focus to attorney disciplinary actions that had nothing to do with preparation and mailing of a demand letter," and "[b]ecause the Court permitted this irrelevant testimony and evidence, it prejudiced Burris' case." (Mem. in Supp. of Mot. for New Trial at 10.) The Court concludes that the evidence of Letourneau's disciplinary history admitted at trial – evidence of the proceedings, the Minnesota Supreme Court's commentary on his office

practices, but not his actual suspension from the practice of law—was relevant and its probative value was not "substantially outweighed" by any danger of unfair prejudice. *See* Fed. R. Evid. 403.

In their testimony at trial, neither Letourneau nor his former office assistant Gina Dorethy testified that they recalled actually mailing the letter at issue. Rather, they testified that the letter would have been mailed, relying on their office's practices for mailing letters. Thus, the reliability of those office practices was a relevant issue for the jury to consider in its determination of whether the letter was mailed and received, and Letourneau's prior disciplinary history related to his office practices for mailing documents was relevant. *Cf. United States v. Mulder*, 147 F.3d 703, 708 (8th Cir. 1998) (district court did not abuse its discretion in excluding testimony on defendant's routine practice in handling financial statements in fraud case because the testimony was not relevant to the question of fraud, although it may have been relevant as impeachment evidence except that "[t]he issue of Moore's routine practice was not squarely presented to the trial court"). Given that the reliability of Letourneau's office practices was squarely in issue at trial, the Court concludes that the evidence of his disciplinary proceedings was highly probative of whether the letter was mailed, and any prejudice did not substantially outweigh that relevance. Furthermore, the Court minimized the possible prejudice of such evidence by excluding evidence of the actual consequences or punishment for Letourneau's disciplinary proceeding. The Court therefore concludes that the admission of evidence of Letourneau's disciplinary proceedings was not an error, nor

did it result in a miscarriage of justice, and will not grant a motion for a new trial on that ground.

## II.    SUMMARY JUDGMENT

In their motion for new trial, Plaintiffs also request, in the alternative, that the Court "reconsider Plaintiffs' motion for summary judgment," asking the Court to reconsider its August 26, 2013 order denying both parties' motions for summary judgment.  (Mot. for New Trial at 1, Jan. 6, 2014, Docket No. 200; *see also* Mem. Op. and Order, Aug. 26, 2013, Docket No. 149.)   In their memorandum in support of the motion, Plaintiffs appear to make the request under Rule 56, but "Federal Civil Rule 56 makes clear that summary judgment is a **pretrial** procedure."  *Dillon v. Cobra Power Corp.*, 560 F.3d 591, 596 (6th Cir. 2009) (emphasis in original) (concluding that a "post-trial order of 2006 reversing the earlier summary judgment order – a pretrial order – was decided by a motion filed after trial and based solely on Garciga's trial testimony . . . cannot be right"); *cf. Metro. Life Ins. Co. v. Golden Triangle*, 121 F.3d 351, 354 (8th Cir. 1997) ("Once the summary judgment motion is denied and the case proceeds to trial, however, the question of whether a party has met its burden must be answered with reference to the evidence and the record as a whole rather than by looking to the pretrial submissions alone." (internal quotations omitted)).   Granting summary judgment for Plaintiffs after the case has proceeded to trial would not be appropriate.

Furthermore, Plaintiffs' request appears to be based on a misunderstanding of the Court's August 26, 2013 Order.  The Court did not make a factual finding that the letter was mailed, but rather concluded that the Dorethy and Letourneau affidavits sufficed to

- 13 -

establish the presumption that the letter was received. *See Burris*, 2013 WL 4519338 at *4 ("Here, the Court concludes that Versa has presented sufficient evidence that the Demand Letter was mailed to trigger the rebuttable presumption, despite the lack of absolute certainty in the affidavits regarding the details of how this particular letter was allegedly mailed ten years ago."). The Court proceeded to conclude that the presumption was rebutted by Lambert's denial of receipt, making the issue of receipt one for the jury. *See id.* at *5. It is well established that a Court's determination at the summary judgment stage that a reasonable jury could make a certain factual determination is not a conclusion actually finding that fact, given that at that stage the Court takes the evidence in a light favorable to the non-moving party. *See Metro Life Ins.*, 121 F.3d at 354 ("The district court's judgment on the verdict after a full trial on the merits thus supersedes the earlier summary judgment proceedings." (internal quotations omitted)).

To the extent that Plaintiffs' request is a motion to alter or amend the Court's summary judgment order under Federal Rule of Civil Procedure 59, such a motion must be made within 28 days of the judgment, which was issued on August 26, 2013, so the motion would be untimely. Fed. R. Civ. P. 59(e). To the extent the request is a motion to reconsider, such a motion is not proper under the Local Rules without first seeking the Court's prior permission and showing "compelling circumstances," which Plaintiffs have not done here. D. Minn. LR 7.1(j). To the extent the motion seeks a judgment as a matter of law under Federal Rule of Civil Procedure 50(b) on the basis that a "no reasonable juror could have returned a verdict for," Gulf, *Weber v. Strippit, Inc.*, 186 F.3d

907, 912 (8th Cir. 1999), the Court does not deem such relief appropriate.[6]   Considering

the evidence in the light most favorable to Gulf, resolving all factual conflicts in Gulf's

favor, and giving Gulf the benefit of all reasonable inferences, *see Ogden*, 214 F.3d at

1002, the Court concludes that judgment as a matter of law in Plaintiffs' favor is not

appropriate.   Plaintiffs presented no direct evidence that the claim letter was mailed, and

the jury was entitled to discredit Letourneau's testimony that the letter was mailed and

instead credit Lambert's testimony that Versa did not receive the letter.

## ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS

HEREBY ORDERED** that Plaintiffs' Motion for New Trial, or in the alternative, for

Summary Judgment [Docket No. 200] is **DENIED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED:   May 20, 2014                    s/ John H. Tunheim
at Minneapolis, Minnesota.                    JOHN R. TUNHEIM
                                       United States District Judge

---

[6] Plaintiffs did not move for judgment as a matter of law before the case was submitted to the jury, but the Court need not determine whether this procedural deficiency would bar such a motion post-trial because the Court concludes that such relief is not warranted.   *See* 9B Charles Alan Wright, *et al.*, Fed. Prac. & Proc. Civ. § 2537 (3d ed.) (discussing split among courts on whether a "post-verdict motion under Rule 50(b) for judgment as a matter of law could . . . be made [if] a previous Rule 50(a) motion for judgment as a matter of law was [not] made by the moving party at the close of all the evidence").